FILED
United States Court of Appeals
Tenth Circuit

January 4, 2012

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

EUGENE SUNDAY,

Defendant - Appellant.

No. 11-8010

(D.C. No. 2:10-CR-00284-NDF-1)

(D. Wyoming)

---

## ORDER AND JUDGMENT[*]

---

Before **GORSUCH**, **ANDERSON**, and **MATHESON**, Circuit Judges.

---

Eugene Sunday appeals the computer and mental health conditions of the

supervised release portion of his sentence for bank fraud and uttering counterfeit

securities. Among other things, he contends that the computer possession and use

conditions are unjustified by the record and constitute an occupational restriction

imposed without the findings required by United States Sentencing Commission,

Guidelines Manual ("USSG"), §5F1.5. He also argues that the mental health

evaluation and treatment conditions are unsupported by the record, and constitute

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

an unconstitutional delegation of Article III judicial authority to a probation officer. Additionally he asserts that the district court committed procedural error by failing to give notice prior to sentencing that these and other special conditions would be imposed, and by failing to make adequate supporting findings. This court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. For the reasons stated below, we remand the case for resentencing.

**BACKGROUND**

Beginning in 2006, Mr. Sunday, a middle-aged career employee of the Federal Aviation Administration stationed in Lusk, Wyoming, enmeshed himself in one or more Nigerian money scams promoted over the internet. The idea, as usual, was that the Nigerians would send him a lot of money if he would send them a little. Actually he sent them a lot (according to the Presentence Report ("PSR"), almost $400,000 from November 2006 to July 2010). In exchange for his remittances to Nigeria, Mr. Sunday received counterfeit money orders and checks delivered by UPS or similar services.

In 2008, he used a combination of such counterfeit checks and bad checks drawn against his own maxed-out credit lines to defraud WYHY Federal Credit Union ("WYHY") by exploiting weaknesses in its system. Specifically, between July 26 and July 29, 2008, Mr. Sunday deposited five bad checks totaling $26,500.00 at the Casper WYHY branch. Instead of directly seeking cash at the

time of deposit, he would have the teller apply the deposited checks to various lines of credit, thus freeing up equal amounts of credit in those lines. He then either directly drew on the newly available credit or used the internet to transfer that credit to his checking account, at which point he would return to WYHY and cash a check for the amount in question. By following these steps, Mr. Sunday avoided having any holds placed upon his fraudulent deposits; and he circuitously gained access to the deposited funds on the same day. Of the $26,500.00 in counterfeit and insufficient funds (NSF) checks that Mr. Sunday deposited at WYHY in July 2008, he obtained $22,800.00 in cash and sent $22,109.50 to Nigeria through MoneyGram or Western Union money transfers.

In August 2008, Mr. Sunday opened two accounts at Bank of the West in Lusk, Wyoming. Between September 11, 2008, and October 9, 2008, he deposited three counterfeit checks – for $2,000.00, $35,000.00 and $40,000.00, respectively – at that bank. Bank of the West placed a hold on the $40,000.00 check, and those funds were never released. But Mr. Sunday did gain access to the remaining $37,000.00 because of delays in the check processing system caused by bad routing numbers on the counterfeit checks, requiring them to be handled manually. Mr. Sunday kept $15,000.00 and sent most of the remaining $22,000.00 to Nigeria.

Mr. Sunday was charged with one count of bank fraud for the five bad checks he deposited at WYHY and three counts of uttering counterfeit securities

for the three checks he passed at Bank of the West. On July 8, 2010, a jury convicted Mr. Sunday on all counts.

Subsequently, the United States Probation Office prepared a PSR which calculated Mr. Sunday's offense level at 15, with a criminal history of category I, and a guidelines range of eighteen to twenty-four months' imprisonment. It also calculated mandatory restitution amounting to $56,750.25.

On February 16, 2011, the district court held a sentencing hearing. It adopted the PSR as its findings of fact and, after receiving the arguments of counsel and two statements by Mr. Sunday, the court sentenced Mr. Sunday to eighteen months' imprisonment followed by five years of supervised release on Count 1 and three years of supervised release on Counts 2-4, to be served concurrently. The court also imposed the standard supervised release conditions established by the United States Sentence Commission. In addition, the court also imposed several special conditions of supervised release, including the following three conditions:

> (1) The defendant shall not use or possess any computer not authorized by the U.S. Probation officer [the "computer use" condition]. (2) The defendant shall consent to having installed on his computer at his own expense any hardware or software systems to monitor computer use. The defendant may be limited to possessing only one personal Internet-capable device to facilitate effective monitoring of his Internet-related activity.
> The defendant shall consent to the U.S. Probation officer conducting periodic unannounced examinations of his computer hardware, software and other electronic devices which may include retrieval and copying of all data from his computer. This also

includes the removal of such equipment if necessary for the purpose of conducting a more thorough inspection or investigation.

The defendant shall agree to sign and abide by the forensic intake agreement and the computer use agreement provided by the U.S. Probation Office. For purposes of this condition, the term "computer" is defined at 18 United States Code Section 1030(e) which includes but is not limited to traditional computers such as Windows, Apple or Linux-based machines, cellular phones, Internet tablets, game machines and related accessories [the "computer surveillance" condition]. The defendant shall obtain a mental health evaluation and engage in treatment recommendations if so directed by the U.S. Probation Office.

The defendant shall participate in mental health evaluations or treatment as recommended by the U.S. Probation officer and will not terminate treatment without permission of the U.S. Probation officer and the treatment provider.

As a component of the defendant's treatment, he shall pay a one-time fee of $750 to partially defray the cost of treatment [the "mental health treatment" condition]. . . .

R. Vol. 1 at 203.[1] As another special condition of supervised release, the court ordered Mr. Sunday to pay restitution in the amount of $56,750.25, to be paid in monthly installments of not less than $500. Id. at 204.

Although the attorneys for both sides had received the PSR, the PSR made no mention of the foregoing special conditions of supervised release, and no notice of those conditions was given prior to their pronouncement. However, prior to pronouncing sentence, the court stated as follows:

At this time the Court will state the sentence. The defendant will – defendant's counsel will be recognized again for any reason

---

[1]We quote from the written judgment, which, with minor grammatical corrections, duplicated the oral judgment rendered by the district court at sentencing.

-5-

other than reasons already argued as to why the sentence should not be imposed as stated.

R. Vol. 3 at 339. Then, following the court's statement of the sentence, including the special conditions, the following colloquy took place:

THE COURT: . . . Mr. Horn [counsel for Mr. Sunday], having heard the sentence stated, do you know of any reason other than reasons already argued why the sentence should not be imposed as stated?

MR. HORN: No, Your Honor.

THE COURT: Does the government?

MS. LESCHUCK: No, Your Honor.

THE COURT: Thank you. The sentence is imposed as stated.

Id. at 343.

As indicated above, Mr. Sunday now appeals the special conditions of his supervised release relating to his possession and use of a computer and for mental health evaluation and treatment.

**DISCUSSION**

**A.**

**Standard of Review**

The parties disagree with respect to the applicable standard of review. Mr. Sunday contends that the usual abuse of discretion standard should apply and that the review should be procedural and substantive reasonableness. United States v.

Hahn, 551 F.3d 977, 982 (10th Cir. 2008). The government contends that our review should be limited to plain error because Mr. Sunday did not object in the district court to the contested conditions of supervised release.

We agree with the government. With rare exceptions, when, as here, a defendant is given an opportunity to object to the imposition of special conditions of supervised release, or to ask for a continuance to address them, and fails to do so, we review for plain error. See United States v. Mike, 632 F.3d 686, 691, 693 (10th Cir. 2011) (plain error standard applies except when defendant is not given an opportunity to object). Such is the case here. The cases cited by Mr. Sunday are either limited to their unique facts, see United States v. Bartsma, 198 F.3d 1191, 1200 n.7 (10th Cir. 1999), are otherwise distinguishable, e.g., United States v. Martinez-Barragan, 545 F.3d 894 (10th Cir. 2008) (length of sentence), or are additionally affected, at least inferentially, by Irizarry v. United States, 553 U.S. 708 (2008).

To establish plain error, the defendant must show: (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity or public reputation of judicial proceedings. United States v. Gonzalez-Huerta, 403 F.3d 727, 732 (10th Cir. 2005) (en banc).

**B.**

**Computer Use and Monitoring Condition**

Mr. Sunday objects to the occupational restriction which prohibited him from using or possessing a computer not authorized by his probation officer, and imposing monitoring and surveillance conditions on any computer use. He argues these restrictions were imposed without the court making the findings required by USSG §5F1.5 for occupational restrictions. Mr. Sunday also argues they are overly broad, unsupported by the facts, violate his Fourth Amendment privacy rights, affect his employment prospects and make it more difficult for him to pay his monthly mandatory restitution.

USSG §5F1.5 provides as follows:

**Occupational Restrictions**

(a) The court may impose a condition of probation or supervised release prohibiting the defendant from engaging in a specified occupation, business, or profession, or limiting the terms on which the defendant may do so, only if it determines that:

  (1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and

  (2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

(b) If the court decides to impose a condition of probation or supervised release restricting a defendant's engagement in a

specified occupation, business, or profession, the court shall impose the condition for the minimum time and to the minimum extent necessary to protect the public.

The government concedes that the district court failed to make the findings required by USSG §5F1.5, and thus agrees this failure was a plain error, for purposes of our plain error review.[2] We now consider whether this plain error, as well as the substance of the actual restriction on computer use and the monitoring conditions, affected Mr. Sunday's substantial rights.

We begin by noting that we have already cautioned that the broad prohibitions on computer use or possession can interfere with such routine activities as "using a computer at a library to do any research, get a weather forecast, or read a newspaper online." United States v. White, 244 F.3d 1199, 1206 (10th Cir. 2001). Indeed, "'although a defendant might use the telephone to commit fraud, this would not justify a condition of probation that includes an absolute bar on the use of telephones.'" United States v. Sofsky, 287 F.3d 122, 126 (2d Cir. 2002) (quoting United States v. Peterson, 248 F.3d 79, 83 (2d Cir. 2001)). Thus, we must ensure that the restriction is "for the minimum time and to the minimum extent necessary to protect the public," and there is a "reasonably direct relationship" between Mr. Sunday's occupation and the offense of conviction.

_____

[2]The government implicitly conceded plain error in its brief, and explicitly conceded it at oral argument.

-9-

In this case, Mr. Sunday is a computer repairman which, obviously, requires direct contact with various computers. And while he used his computer, in part, to commit his offense of conviction, the computer was not the central or solitary means he used. He conducted his fraudulent bank transactions in a variety of ways, using the computer for some of them, undoubtedly, but presumably not all.

Furthermore, if Mr. Sunday is to resume working and becoming a productive member of society, he would most likely seek employment in the computer field. The restriction as written would seriously impair his ability to do so. See United States v. Holm, 326 F.3d 872, 878 (7th Cir. 2003) ("Because [defendant] is most likely to find gainful employment in the computer field upon his release, the conditions as currently written could affect his future productivity and jeopardize his rehabilitation in violation of the command of § 3583(d)."). And, inhibiting Mr. Sunday's work prospects will make it more difficult for him to pay his mandatory monthly restitution.

We note that the government downplays the imposition caused by this restriction, arguing that Mr. Sunday simply has to ask permission from his probation officer. While we realize that such "conditional" restrictions are viewed more favorably by most courts than unconditional restrictions, this restriction could be quite burdensome to Mr. Sunday, were he to return to repairing computers.

We therefore conclude that the computer restriction, as written, affected Mr. Sunday's substantial rights.  See United States v. Mayo, 642 F.3d 628 (8th Cir. 2011) (computer use restriction was plain error affecting substantial rights); United States v. Barsumyan, 517 F.3d 1154, 1162 (9th Cir. 2008) (same); United States v. Pruden, 398 F.3d 241, 251 (3rd Cir. 2005) ("A plainly erroneous condition of supervised release will inevitably affect substantial rights, as a defendant who fails to meet that condition will be subject to further incarceration.").

We also conclude that imposition of an erroneous restriction "seriously affect[ed] the fairness . . . of [the] judicial proceedings."  United States v. Olano, 507 U.S. 725, 736 (1993).  See Pruden, 398 F.3d at 251 ("[I]mposing a sentence not authorized by law seriously affects the fairness, integrity and reputation of the proceedings.").

In sum, given the required scrutiny which we give to occupational restrictions, we conclude we must vacate the occupational restriction relating to computer use and monitoring and remand for further consideration, including making the findings required before imposition of any occupational restriction.  See Mike, 632 F.3d at 698 (noting that where court failed to make §5F1.5 findings before imposing occupational restrictions, we vacated and remanded outright).

## C.

### Mental Health Evaluation and Other Issues

Our remand of this case for resentencing makes it unnecessary to address Mr. Sunday's additional challenges to the special conditions of confinement. And, the notice issue is now moot. As part of the resentencing process, the district court is directed to revisit the mental health evaluation and treatment conditions, making further supporting findings to support any reimposition of such conditions, consistent with this court's discussion of the issue in Mike. Id. at 698-700. Additionally, and also consistent with Mike, any mental health conditions imposed should avoid Article III ambiguities with regard to the probation officer's supervisory discretion.

Finally, it is assumed that at resentencing Mr. Sunday will be allowed to develop arguments and present relevant evidence relating to the proposed imposition of special conditions of supervised release.

## CONCLUSION

For the reasons stated above, the case is REMANDED for resentencing consistent with this opinion.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge