PUBLISH

**February 10, 2015**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

MICHAEL LOREN DUNN,

     Defendant - Appellant.

No. 13-4140

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 09-CR-00895-RJS-BCW-1)**

Scott Wilson, Assistant Federal Public Defender (and Kathryn N. Nester, Federal Public Defender, on the briefs), Salt Lake City, Utah, for Defendant - Appellant.

Sonja Ralston, Attorney, Appellate Section, Criminal Division, U.S. Department of Justice, (Carlie Christensen, Acting United States Attorney, Diana Hagen, Assistant United States Attorney, Appellate Chief, District of Utah, Leslie R. Caldwell, Assistant Attorney General, David A. O'Neil, Acting Deputy Assistant Attorney General, on the brief), Washington, D.C., for Plaintiff - Appellee.

Before **KELLY**, **BALDOCK**, and **EBEL**, Circuit Judges.

**KELLY**, Circuit Judge.

Defendant-Appellant Michael Loren Dunn was convicted of possession of

child pornography, 18 U.S.C. § 2252A(a)(5)(B) (Count I), receipt of child

pornography, 18 U.S.C. § 2252A(a)(2) & (b) (Count II), and distribution of child pornography, 18 U.S.C. § 2252A(a)(2) & (b) (Count III). 1 R. 583–85. The district court sentenced Mr. Dunn to 144 months' imprisonment and a 25-year term of supervised release. Id. at 1042–44. The district court imposed several special conditions of supervised release, some of which restrict Mr. Dunn's ability to use and access both computers and the Internet. In addition to his sentence, Mr. Dunn was ordered to pay $583,955 in restitution to one of the victims depicted in images he possessed and distributed. Id. at 1046.

On appeal, Mr. Dunn argues that: (1) an erroneous jury instruction relieved the government of its burden to prove that he "distributed" child pornography; (2) his convictions for receipt and possession of child pornography are multiplicitous and thus violate the Double Jeopardy Clause; (3) the special condition of supervised release requiring him to comply with a computer and Internet monitoring program was not supported by necessary findings of fact; and (4) the district court applied the wrong legal standard in determining the amount of restitution owed by Mr. Dunn. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Background

This case involves the downloading and sharing of child pornography on an

Internet-based peer-to-peer network. Like many peer-to-peer file-sharing programs, LimeWire permits users to search for and download electronic files from other users who are running the program. Generally speaking, these file-sharing programs are effective only if users make their own files available for sharing with other users of the same program. For this reason, LimeWire's default setting automatically places a user's downloaded files into a shared folder; the contents of the shared folder are, by default, searchable by other users and the files contained therein may be downloaded at the other users' command. Relevant to this case, this default setting can be changed manually so that a user's downloaded files are not automatically made available to other LimeWire users.

The Utah Internet Crimes Against Children Task Force monitors peer-to-peer networks using an automated search program that identifies probable child pornography files. Law enforcement can often identify these files by their SHA-1 (secured hash algorithm) values. Similar to human DNA, SHA-1 values are unique, 32-character identifiers given to a file by a universal algorithm. Separate files with the same SHA-1 values will have identical content.

Between 2007 and 2009, the Utah Task Force observed a particular internet-protocol (IP) address offering to share files on LimeWire with SHA-1 values consistent with known child pornography files. Law enforcement agents were able to trace the IP address to Mr. Dunn. Subsequently, a warrant was obtained authorizing the search and seizure of Mr. Dunn's computers. The

warrant was executed on March 26, 2009 and resulted in the seizure of four computers and one external hard drive.

A forensic analysis of the computers revealed that at least 20 child pornography images had been downloaded via LimeWire. All of the files were stored in the program's shared folder and were therefore available for download to other users. At trial, both sides presented expert witnesses. Mr. Dunn presented an expert witness to rebut the government's computer forensics expert. At the close of evidence, each side submitted proposed jury instructions. Mr. Dunn's proposed instruction on the distribution offense would have required the jury to find, as an element of the offense, that a third-party had actually received child pornography from Mr. Dunn. The district judge rejected this instruction, and instead instructed the jury that "if a person knowingly makes images available on a peer-to-peer file sharing network, such as LimeWire, this is considered 'distribution' of the images." 1 R. at 850. The jury found Mr. Dunn guilty on all three counts.

Based upon a total offense level of 37 and a criminal history category of I, the Presentence Report calculated the sentencing range of imprisonment as 210-262 months. 2 R. at 72. However, despite denying Mr. Dunn's request for a downward adjustment based on acceptance of responsibility and a request for a five-year minimum sentence, the district court imposed a below-Guidelines sentence of 144 months' imprisonment. Further, the district court imposed a 25-

year term of supervised release and several special conditions of supervised release. One of the special conditions requires Mr. Dunn to participate in the Computer and Internet Monitoring Program conducted by Probation and Pretrial Services. This program restricts Mr. Dunn's ability to use and access computers and the Internet, and requires Mr. Dunn to obtain pre-approval from his probation officer prior to engaging in certain computer-related activities. Mr. Dunn was previously employed as both a computer technician and computer teacher.

A restitution request was filed by a representative (Professor Paul Cassell, through the University of Utah Appellate Law Clinic) of one of the victims depicted in the child pornography images possessed and distributed by Mr. Dunn. The victim, "Vicky," sought restitution under 18 U.S.C. § 2259 in the full amount of her <u>unpaid</u> aggregate losses—$583,955. Mr. Dunn requested that Vicky's representative produce an up-to-date economic report establishing the amount of Vicky's losses and a causal link between Mr. Dunn's conduct and those losses. The district court denied that request, found that Vicky was a victim of Mr. Dunn's crimes and, most importantly, "conclude[d] that all her losses were proximately caused by Dunn." 1 R. Supp. at 32. As such, the court ordered Mr. Dunn to pay Vicky restitution in the full amount of her unpaid aggregate losses. <u>Id.</u> at 37.

Discussion

Mr. Dunn raises four issues on appeal. First, he argues that the district court erred by instructing the jury that it could convict him on the distribution charge simply by finding that he made child pornography <u>available</u> for sharing on LimeWire. Second, he argues that under <u>United States v. Benoit</u>, 713 F.3d 1 (10th Cir. 2013), his sentences for receipt and possession of child pornography are multiplicitous and violate the Double Jeopardy Clause. Third, he contends that the district court did not make the necessary findings to support the imposition of a special condition of supervised release concerning his ability to use and access computers and the Internet. Fourth, he argues that the district court applied the wrong legal standard when it determined that he owed a victim the full amount of her unpaid aggregate losses.

The government agrees that the district court erred regarding the second and fourth issues; however, it contends that the district court's findings of fact on the restitution issue should be left undisturbed. We consider each of these arguments in turn.

A.    <u>Jury Instructions Regarding "Distribution"</u>

We first consider Mr. Dunn's challenge to the jury instructions on the distribution charge. Our review of jury instructions is de novo, <u>United States v. Serrata</u>, 425 F.3d 886, 898 (10th Cir. 2005), and we will "reverse for instructional error only where it is prejudicial in view of the entire record." <u>United States v.</u>

Wittgenstein, 163 F.3d 1164, 1169 (10th Cir. 1998); see United States v. Batton, 602 F.3d 1191, 1199 (10th Cir. 2010).

Mr. Dunn contends that the jury instructions on the distribution charge amounted to a "mandatory" presumption in favor of conviction. It seems to us, however, that Mr. Dunn is actually making two arguments. First, instead of permitting the jury to infer distribution based on Mr. Dunn's act of placing files into a folder available for sharing, the jury instructions required the jury to find that this act was, under the law, distribution itself. Second, the instructions "required the jury to disregard his expert testimony and with it much of his theory of the case." Aplt. Rep. Br. at 1. The government counters that the instruction was a correct statement of the law and any error was harmless because the jury's verdict necessarily encompassed attempted distribution.

The two instructions at issue here are Instructions 47 and 48. The former lists the essential elements of the distribution offense and instructs the jury that it must find beyond a reasonable doubt that Mr. Dunn:

> Did knowingly distribute or knowingly attempt to distribute child pornography, to-wit: knowingly made available for sharing electronically image files that he knew depicted children engaged in sexually explicit conduct.

1 R. at 849. The latter provides:

> [I]f a person knowingly makes images available on a peer-to-peer file sharing network, such as LimeWire, this is considered "distribution" of the images. In other words, the Government may meet its burden of proof on this element by showing that Defendant knowingly

allowed others access to his LimeWire shared folder.

Id. at 850 (emphasis added). In Mr. Dunn's view, these instructions were impermissible because they "requir[ed] the jury to infer the conclusion that Mr. Dunn had distributed child pornography if the government proved the predicate fact he knowingly allowed child pornography to be accessible in the shared folders of his LimeWire account." Aplt. Br. at 15.

As an initial matter, the requirement that Mr. Dunn knowingly allowed the contraband to be accessible cuts against his theory of a mandatory presumption of distribution. More importantly, however, in United States v. Shaffer, 472 F.3d 1219, 1223–24 (10th Cir. 2007), we concluded that active distribution or transfer of possession to another is not required to prove distribution under § 2252A(a)(2): a reasonable jury could find that knowingly allowing others access to child pornography over the internet is sufficient. Thus, the defendant's placement of child pornography files into a shared folder accessible to other users was itself sufficient for the trier of fact to conclude that the defendant had "distributed" the material. Id. at 1224. We analogized the defendant's conduct to that of an operator of a self-serve gas station and reasoned that "[h]e may not have actively pushed pornography on [peer-to-peer] users, but he freely allowed them access to his computerized stash of images and videos and openly invited them to take, or download, those items." Id. at 1223. Shaffer controls this case. Moreover, in an unpublished order and judgment, we recently rejected a similar challenge to an

identical instruction. United States v. Dayton, 485 F. App'x 937, 941 (10th Cir. 2012).

Mr. Dunn's second argument is that "the instructions required the jury to accept the government's evidence about how LimeWire operates." Aplt. Rep. Br. at 1. He similarly contends that the same instructions prohibited the jury from believing any of the defense expert's testimony. Id.

This argument completely misses the mark. Mr. Dunn points to nothing, and we have found nothing, in the instructions that requires the jury to accept the government's evidence. There is nothing in the instructions that even remotely suggests that the jury must, or even should, reject the defense expert's testimony and theory of the case. To the contrary, the jurors were instructed that they were to weigh all of the evidence in the case, that they were the sole judges of the credibility of the witnesses, and that they alone determined the weight that such testimony deserved. 1 R. 806, 807, 812–813. All of the issues Mr. Dunn raises on this point go to the weight, credibility, and sufficiency of the evidence, rather than some error in the jury instructions that relieved the government of its burden of proof. Mr. Dunn overlooks the most reasonable (and probable) explanation for the jury's conclusions—that the jury rejected the defense theory of the case and found the government's evidence sufficient and reliable. Accordingly, we conclude that the instructions were proper.

B.     Multiplicitous Sentences for Possession and Receipt of Child Pornography

Next, Mr. Dunn argues that his sentences for possession and receipt of child pornography violate the Double Jeopardy Clause because they are multiplicitous.  Mr. Dunn did not raise this argument in the district court and therefore we review only for plain error.  United States v. Frierson, 698 F.3d 1267, 1269 (10th Cir. 2012).  To succeed under plain error review, the defendant must show (1) an error, (2) that is plain, (3) which affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.  United States v. Gonzalez-Huerta, 403 F.3d 727, 732 (10th Cir. 2005) (en banc).

Both parties agree that it is plain error to punish Mr. Dunn on both the receipt and possession charges.  At the time Mr. Dunn was sentenced, this court had already decided United States v. Benoit, 713 F.3d 1 (10th Cir. 2013), where we held that "possession is a lesser included offense of receipt in cases in which the same child pornography forms the basis of each charge."  Id. at 6–7.  In that case, the defendant's possession and receipt convictions were predicated on the same child pornography images.  Thus, we found that the multiplicity doctrine was implicated because the two charges were based on the same conduct, rather than "two distinct sets of conduct."  Id. at 16 (internal quotations omitted).  We reversed and remanded with instructions to vacate one of the convictions.  Id. at 18.

Here, the government concedes that the receipt and possession convictions are predicated on the same child pornography material. Aplee. Br. at 21 n.5 (noting that the Superseding Indictment, jury instructions, and the prosecution's opening and closing arguments "all referred to only one set of images when discussing both charges"). Sentencing Mr. Dunn on the possession and receipt counts for the same conduct therefore violates the Double Jeopardy Clause. We thus have no problem concluding that there has been plain error, Frierson, 698 F.3d at 1270, and accordingly reverse and remand to the district court with instructions to vacate one of Mr. Dunn's convictions. See Rutledge v. United States, 517 U.S. 292, 301–02, 307 (1996).

C.     Special Conditions of Supervised Release Bearing on Employment

Mr. Dunn also challenges the imposition of a special condition of supervised release mandating his participation in the Probation and Pretrial Services' Computer and Internet Monitoring Program (monitoring program). Both parties agree that the condition is an occupational restriction, as Mr. Dunn was previously employed as both a computer teacher and computer technician. The question we now consider is whether the district court made the necessary findings to support the imposition of such restriction. Because he did not object to the imposition of this condition at sentencing, we review this challenge only for plain error. United States v. Burns, No. 13–5045, 2014 WL 7381055, at *1 (10th Cir. Dec. 30, 2014).

As part of Mr. Dunn's 25-year term of supervised release, the district court imposed a number of standard and special conditions. 1 R. at 1044–45. The monitoring program imposes a number of robust restrictions on Mr. Dunn's ability to use and access both computers and the Internet, and permits Probation to monitor that use. Among other things, the monitoring program: permits Mr. Dunn to use or possess only one computer at home or work; grants Probation permission to install monitoring software on "any computer [Mr. Dunn is] authorized to use"; requires Mr. Dunn to "notify all individuals that have access to [his] computer system that it is subject to monitoring and/or search/seizure"; limits his use to computer hardware and software that has been specifically pre-approved by Probation; and prohibits him from changing, re-installing, or upgrading the operating system on any computer he is authorized to use. 2 R. Supp. Several restrictions allow Mr. Dunn to engage in otherwise proscribed conduct if he obtains the prior approval of Probation.

While district courts have broad discretion to impose conditions of supervised release, that discretion is circumscribed by statutory and constitutional limitations. United States v. Mike, 632 F.3d 686, 692 (10th Cir. 2011). As a starting point, conditions of supervised release must comport with the requirements set forth in 18 U.S.C. § 3583(d).[1] Additionally, conditions of

---

[1] Pursuant to § 3583(d), conditions of supervised release must:

[1] be reasonably related to at least one of the following: the nature

- 12 -

release that impinge on a defendant's ability to seek, obtain, and maintain employment are subject to "special scrutiny," the standards of which are set forth in U.S.S.G. § 5F1.5.  United States v. Butler, 694 F.3d 1177, 1184 (10th Cir. 2012).  A sentencing court seeking to impose occupational restrictions must first determine that:

> (1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and

> (2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted.

U.S.S.G. § 5F1.5.  Even if this determination is made, the court "may only impose the condition 'for the minimum time and to the minimum extent necessary to protect the public.'"  Butler, 694 F.3d at 1184 (quoting U.S.S.G. § 5F1.5(b)). This court has stated that "[a] district court's duty to specifically find that a

---

and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical, or other correctional needs.

[2] . . . involve no greater deprivation of liberty than is reasonably necessary to achieve the purpose of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation.

[3] . . . be consistent with any pertinent policy statements issued by the Sentencing Commission.

Mike, 632 F.3d at 692.

restriction is minimally restrictive is mandatory," and has "consistently vacated conditions that interfere with a defendant's occupation when no such finding is made." Id. (emphasis added).

The first two requirements of plain error review—(1) an error, (2) that is plain—are easily satisfied here. "Our precedents unambiguously require supporting findings when courts impose special conditions of supervised release." Burns, 2014 WL 7381055, at *2. Although the government would prefer us to infer from the imposition of the computer restrictions that the district court implicitly made the required findings, we refuse to do so in light of our command that district courts must make specific findings to justify these types of conditions. See Butler, 694 F.3d at 1184.

Mr. Dunn must also show that the district court's error affects both (3) his substantial rights and (4) the fairness, integrity, or public reputation of the judicial proceedings. He has made such a showing.

"An error affects substantial rights if there is a reasonable probability that the error affected the outcome of the proceedings." Burns, 2014 WL 7381055, at *2. In this context, we ask whether there is a reasonable probability that, but for the court's error, Mr. Dunn would have received a lesser sentence. Id. Such a probability exists here. Even assuming there is enough support in the record to satisfy § 5F1.5's requirements that there be a "reasonably direct relationship" between Mr. Dunn's occupation and the offense of conviction and that the

condition is "reasonably necessary to protect the public" from a risk of re-offending, the record is devoid of any support as to whether the district court found such a condition to be minimally restrictive in light of Mr. Dunn's occupation. In United States v. Sunday, 447 F. App'x 885, 889–90 (10th Cir. 2012) (unpublished), we vacated similar computer use restrictions on plain error review where the district court failed to make the necessary findings. There, we expressed concern that the restriction "would seriously impair" the defendant's ability to continue in his career as a computer repairman and, as a second-order effect, "make it more difficult for him to pay his mandatory monthly restitution." Id. at 890; see also Butler, 694 F.3d at 1185.

After a careful review of the record, we cannot conclude that the district judge found—either explicitly or implicitly—that compliance with the monitoring program for the entire term of supervised release was minimally restrictive. As Mr. Dunn correctly points out, a number of the judge's statements at the sentencing hearing suggest exactly the opposite. At that hearing, the judge stated that he did not "believe there's a substantial likelihood that Mr. Dunn will reoffend" and found that he was "extraordinarily remorseful." 2 R. at 105. The judge made no specific findings with regard to the special conditions of supervised release, instead asserting that they were "appropriate given the facts and circumstances of this case." Id. at 107. It is unclear to us whether the district judge even considered the effect of the computer monitoring program on Mr.

- 15 -

Dunn's prospects for future employment or his ability to pay restitution to his victims. Perhaps the district court would make such findings, "[b]ut, the record is not sufficient for us to make this determination in the first instance." Burns, 2014 WL 7381055, at *2.

Imposing such an onerous restriction, especially when the restriction will, for all intents and purposes, materially impact the defendant's ability to obtain work, affects the fairness, integrity, and public reputation of judicial proceedings when the district court fails to make any special findings with respect to that restriction. Sunday, 447 F. App'x at 890; see United States v. Pruden, 398 F.3d 241, 251 (3d Cir. 2005). Thus, "given the required scrutiny which we give to occupational restrictions, we conclude we must vacate the occupational restriction relating to computer use and monitoring and remand for further consideration, including making the findings required before imposition of any occupational restriction." Sunday, 447 F. App'x at 890. On remand, the district court should vacate the restrictions and reconsider the matter with proper findings.

D.    Restitution Under 18 U.S.C. § 2259 After Paroline

Finally, Mr. Dunn challenges the district court's order requiring him to pay $583,955 in restitution to one of the victims depicted in the child pornography he possessed and distributed. The government agrees with Mr. Dunn that in light of the Supreme Court's recent decision in Paroline v. United States, 134 S. Ct. 1710 (2014), we should vacate the district court's order and remand for proceedings

consistent with Paroline.  We agree that the district court's restitution order is inconsistent with Paroline.  On remand, the restitution should be vacated and considered res nova.

Following Mr. Dunn's convictions, one of the children depicted in images of child pornography he possessed and distributed, "Vicky," filed a request for restitution pursuant to 18 U.S.C. § 2259.   Vicky sought $583,955 from Mr. Dunn, which represented the amount of her total losses minus the amount of restitution she had previously received from other defendants by way of restitution.  The district court denied Mr. Dunn's motion seeking "to compel Vicky to produce a more up-to-date economic report regarding her damages and regarding the damages Mr. Dunn caused as a result of his underlying criminal behavior."  1 R. Supp. at 31.  The district court found that the "exhibits supporting Vicky's restitution request are credible and accurately establish the extent of her losses from child pornography."  Id.

The district court concluded, based on its findings of fact and conclusions of law, that "there is a sufficient nexus between Dunn's crimes and all of the losses suffered by Vicky to award restitution for those losses."  Id. at 32.  Relying heavily on the Seventh Circuit's decision in United States v. Laraneta, 700 F.3d 983 (7th Cir. 2012), the district court concluded that because Mr. Dunn was a distributor of Vicky's images, his acts were of such a nature that he should be held jointly and severally liable for the entirety of Vicky's injuries.  1 R. Supp. at

34–35. The district court also found its order to be consistent with this court's decision in Benoit, 713 F.3d 1, where we held that a restitution order pursuant to § 2259 requires a finding that the defendant proximately caused the victim's injuries.

Paroline resolved a circuit split on the question of "what causal relationship must be established between the defendant's conduct and a victim's losses for purposes of determining the right to, and the amount of, restitution under § 2259." 134 S. Ct. at 1716. After holding that § 2259 requires a showing of proximate cause, the Court turned its attention to what it considered "the primary problem"—what "causation in fact" standard to apply in these cases. Id. at 1722. In other words, because the statute requires a causal nexus between a particular defendant's conduct and the victim's losses, how should courts determine the amount of restitution owed by a single defendant—likely unknown to the victim in many, if not most, cases—to the victim, when that defendant is one of potentially thousands of individuals who has engaged in possession or distribution of the images. Id.

Because of the "somewhat atypical causal process underlying the losses" in the child pornography context, the Court rejected the "traditional way to prove that one event was a factual cause of another." Id. The Court instead embraced an "aggregate causation" theory, premised on the fact that one single cause may be neither sufficient nor necessary to bring about a certain result, yet still may be

- 18 -

considered a cause in fact of that result. Id. at 1724–26. Borrowed from tort principles, this theory has limitations, especially when transplanted to the criminal context. Id. at 1724. Thus, while a single defendant who possessed or even trafficked in child pornography undoubtedly "plays a part in sustaining and aggravating this tragedy," id. at 1726, the Court outright rejected the notion that any one such defendant should be held liable for "the conduct of thousands of geographically and temporally distant offenders acting independently, and with whom the defendant had no contact," id. at 1725.

Applying an aggregate causation model, but with important limiting principles, the Court provided:

> [W]here it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

Id. at 1727 (emphasis added). For an offender like Paroline, who possessed two images of the particular victim seeking restitution, the contribution to the causal process is "very minor," id. at 1725, and therefore the restitution order should be neither "severe" nor "token." Id. at 1727.

The Court acknowledged that setting a proper restitution award under this standard will involve both "discretion and estimation," id. at 1729, and noted that

- 19 -

a "precise mathematical inquiry" would be ill-suited for the time being, id. at 1728.  Rather, a district court "must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses."  Id. at 1727–28.  The Court cited a number of factors that district courts should consider as "rough guideposts" in "determining an amount that fits the offense."  Id. at 1728.  After determining the "amount of the victim's losses caused by the continuing traffic in the victim's images," a district court should consider, among other things:

> the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

Id.

It is clear that the district court's order requiring Mr. Dunn to pay $583,955 cannot stand in light of Paroline.  That order clearly holds Mr. Dunn liable for the "the conduct of thousands of geographically and temporally distant offenders acting independently, and with whom [Mr. Dunn] had no contact," in contravention of Paroline's guidance.  Id. at 1725.  This conclusion is demonstrated by the fact that Vicky's total losses were approximately $1.3

- 20 -

million and Mr. Dunn, a single defendant, was held jointly and severally liable for nearly half of her losses. And while the district court properly acknowledged that Mr. Dunn was not a mere possessor, but was convicted as well for distributing child pornography, the court placed near dispositive reliance on that fact in fashioning the restitution award. See 1 R. Supp. at 32, 35–36. Indeed, it is inherently logical to view distributors as more culpable in the causal process than "mere" possessors; however, we think it important to note that not all distributors should be placed on the same footing. As noted, a reasonable jury could conclude that Mr. Dunn distributed the contraband by knowingly placing it into a shared folder on a peer-to-peer network. But in assessing Mr. Dunn's relative role in the causal process for restitution purposes, the district court should consider the facts underlying that conviction—i.e., did the government show that others had actually downloaded files from Mr. Dunn and, if so, had only one or two other people downloaded those images from him, or had hundreds or thousands over a period of years. We think these are proper considerations in light of Paroline's guidance that the amount of restitution "be a reasonable and circumscribed award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role." Id. at 1727 (emphasis added).

Finally, the parties dispute whether we should overturn the district court's factual finding that Vicky's total losses—the starting point from which Mr.

Dunn's restitution amount shall be determined—are $1,330,015. According to Mr. Dunn, "the measure of Vicky's damages under the rule in Paroline is the harm associated with 'the continuing traffic in [her] images,' a total from which the harms caused by her initial abuse have been subtracted." Aplt. Br. at 26 (quoting Paroline, 134 S. Ct. at 1722). Mr. Dunn contends that "[t]he expert reports regarding Vicky's damages do not clearly distinguish the primary harms associated with her original abuse from those secondary harms flowing from the dissemination of images of her online," id. at 27, and therefore the district court's "starting point" was flawed. The government does not challenge Mr. Dunn's assertion regarding the expert report. Rather, it argues (a) that Paroline does not require district courts to consider only those losses caused by the continued trafficking in a victim's images, and (b) Mr. Dunn waived this argument by failing to object at sentencing. Aplee. Br. at 31–32.

We acknowledge that Paroline did not resolve this precise question. 134 S. Ct. at 1722 ("Complications may arise in disaggregating losses sustained as a result of the initial physical abuse, but those questions may be set aside for present purposes."). But the clear rationale of Paroline is that a defendant should be held accountable for the measure of losses that he individually has caused. We think it inconsistent with "the bedrock principle that restitution should reflect the consequences of the defendant's own conduct" to hold Mr. Dunn accountable for those harms initially caused by Vicky's abuser. Id. at 1725. Thus, to the extent

that the district court relied on an expert report that did not disaggregate these harms, the district court's adoption of $1.3 million as the total measure of damages cannot stand.  Mr. Dunn's objection, requesting a "more up-to-date economic report regarding her damages and regarding the damages that Mr. Dunn caused as a result of his underlying criminal behavior," 1 R. Supp. at 31, was sufficient to preserve this argument.  Accordingly, on remand, the restitution order should be vacated, further proceedings conducted, and the matter considered anew with the above guidance.

AFFIRMED in part, REVERSED in part, and REMANDED.