**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

KEVIN LEROY SMITH,

     Defendant - Appellant.

No. 15-5005

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 4:14-CR-00112-JED-1)**

---

Barry L. Derryberry, Research & Writing Specialist (Julia L. O'Connell, Federal Public Defender, and William P.Widdell, Jr., Assistant Federal Public Defender, with him on the briefs) Office of the Federal Public Defender, Northern and Eastern Districts of Oklahoma, for Defendant - Appellant.

Jeffrey A. Gallant, Assistant United States Attorney (Danny C. Williams, Sr., United States Attorney, with him on the brief) United States Attorney's Office, Tulsa, Oklahoma for Plaintiff - Appellee United States of America.

---

Before **HARTZ**, **GORSUCH**, and **PHILLIPS** Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Defendant Kevin Smith was convicted after a jury trial on eight counts of

distributing child pornography, *see* 18 U.S.C. §§ 2252(a)(2), 2252(b)(1), and one count of possessing child pornography, *see* 18 U.S.C. §§ 2252(a)(4)(B), 2252(b)(2).  The distribution counts corresponded to eight separate dates on which an FBI agent downloaded child pornography onto the agent's computer from a folder on Defendant's computer that was shared over a peer-to-peer network.  He was sentenced to 210 months' imprisonment.

Defendant appeals on two grounds:  First, he contends that the eight counts of distribution were multiplicitous, in violation of the Fifth Amendment's prohibition on double jeopardy.  He argues that the proper unit of prosecution is his making the pornography available (which, he asserts, occurred only once), not every instance that the pornography is downloaded.  Second, he contends that the district court violated Fed. R. Crim. P. 32(i)(3)(B) at sentencing when it adopted the presentence-report (PSR) account of his pending child-rape charge over his pro se objection without making a finding based on the preponderance of the evidence.  We affirm.  Defendant did not raise the double-jeopardy issue below and he has not shown plain error.  And the district court's refusal to address a pro se objection by a defendant represented by counsel was not an abuse of discretion and, in any event, was harmless.

## I.     BACKGROUND

Defendant used the Ares peer-to-peer file-sharing program to view child pornography.  Peer-to-peer file sharing allows users to search content in the "shared" folders of other users' computers.  A user can then download content in those folders

2

directly from the other users' computers. When a file is downloaded by an Ares user, it is placed in the user's "shared" folder by default, although the downloader can set the program not to share files. Many of the images and videos downloaded by Defendant remained in his shared folder, available to any other Ares user wishing to download them.

On January 8, 2014, FBI Special Agent Joseph Cecchini searched the Ares file-sharing network for child pornography. He found child pornography at the internet-protocol address for Defendant's computer and downloaded one such image. Using Ares, Agent Cecchini again downloaded images and videos from Defendant's computer on January 24, January 25, January 26, February 3, February 6, February 7, and February 11. On April 9, 2014, agents executed a search warrant at Defendant's residence and confiscated his laptop, which contained 290 images and 143 videos of child pornography. He admitted to police that he had used the Ares system to download child pornography. He also said he knew how the Ares system worked and was aware he was sharing files. He reported deleting the program many times, but he also said that he continued reinstalling it to access child pornography.

Defendant was indicted on eight counts of distribution and attempted distribution of child pornography and one count of possession of child pornography. At trial Defendant denied making the prior confession and testified that he did not know what peer-to-peer file sharing is and did not intentionally use Ares to download child pornography. He said that he tried to delete the program but that it continued to run in

the background and put the files on his computer without his knowledge or permission. The jury convicted him on all nine counts.

At sentencing, Defendant acknowledged that he had read the PSR and had gone over it with counsel in person. The PSR reported a pending state charge against him for first-degree rape of a child under the age of 14. It said that the DNA from the victim's physical examination matched Defendant's, and that there was a recorded jail telephone conversation between Defendant and his wife in which he said that the "authorities should not find any blood evidence in the vehicle because he did not force her, she told him that she was 17 years old, and he paid for it." R., Vol. 3 at 25 (PSR). The PSR also mentioned that on a separate occasion Defendant allegedly attempted to abduct two young girls from a lemonade stand, but no charges had been filed.

Through his counsel, Defendant unsuccessfully objected to the PSR recommendation for an obstruction-of-justice enhancement of his sentencing-guidelines offense level based on his perjury at trial. Counsel also argued for a downward variance from the guidelines recommended sentencing range. He discussed Defendant's age, the chances of recidivism, and the enhancement for use of a computer, *see* U.S.S.G. § 2G2.2(b)(6). He also briefly addressed the pending rape charge, stating:

> I do want to point out just in the government's response they spend a long time talking about Mr. Smith's state court charges. And I think what I would like to say is, that I don't know the facts of those state court charges. I know that an Information has been filed on at least one of those and it hasn't gone any further than that. I anticipate that Mr. Smith will have a jury trial and the state court will decide if Mr. Smith has violated state laws.

R., Vol. 2 at 274. After the government responded, the court asked Defendant if he had anything to say before being sentenced. Defendant made a statement in which he contested his guilt on the state-court charge and complained about other aspects of the trial.

The court adopted the PSR's findings of fact, calculated the applicable guidelines sentencing range as 262–327 months, and varied downward on the ground that the two-level offense-level enhancement for use of a computer was duplicative, as it applies in virtually every child-pornography case. The court stated that the variance "results in a variance guideline range of 210 to 262 months." R., Vol. 2 at 290. Regarding the pending state charge, it said:

> [T]he defendant's unrelated pending criminal case involving the alleged rape and kidnapping of a prepubescent girl, a case in which the defendant's DNA was matched and a recorded jail conversation between the defendant and his wife acknowledged sex with a girl, . . . was also considered in determining a sufficient but not greater [than] necessary sentence within the aforementioned variance guideline range.

*Id*. at 290–91. The court sentenced Defendant to 210 months' imprisonment, the bottom of the variance guideline range.

## II.    DISCUSSION

### A. Double Jeopardy

Defendant complains that his convictions on eight counts of distributing child pornography violated the Double Jeopardy Clause because the convictions are all for a single offense. He is correct that the Clause prohibits multiplicity—convicting a person

5

on more than one count for a single offense. *See United States v. Esch*, 832 F.2d 531, 541 (10th Cir. 1987). Because each of the distribution counts charges "a separate crime under the same statute[,] . . . [t]he pertinent inquiry becomes defining the correct unit of prosecution." *Id*. That is, we must determine "whether conduct constitutes one or several violations of a single statutory provision." *Callanan v. United States*, 364 U.S. 587, 597 (1961).

Section 2252(a)(2) prohibits the knowing distribution of child pornography; and § 2252(b) sets the punishment for anyone who "violates, or attempts or conspires to violate" § 2252(a)(2). Defendant argues that our cases establish that the proper unit of prosecution when a defendant distributes child pornography over a peer-to-peer network is the act of making the pornography available on the peer-to-peer network, not each instance in which an individual downloads an image from the defendant's shared folder. Because Defendant did not make this argument in the district court, our review is for plain error only. *See United States v. Frost*, 684 F.3d 963, 971 (10th Cir. 2012). We will grant relief under the plain-error standard only if (1) the district court committed an error, (2) the error is clear at the time of the appeal, (3) the error "affects substantial rights," and (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. (internal quotation marks omitted). An error is *clear* "when it is contrary to well-settled law." *United States v. Whitney*, 229 F.3d 1296, 1309 (10th Cir. 2000). For us to characterize a proposition of law as well-settled, we normally require precedent directly in point from the Supreme Court or our circuit or a consensus in the

6

other circuits.  *See United States v. Teague*, 443 F.3d 1310, 1319 (10th Cir. 2006) ("If

neither the Supreme Court nor the Tenth Circuit has ruled on the subject, we cannot find

plain error if the authority in other circuits is split."); *United States v. Ruiz-Gea*, 340 F.3d

1181, 1187 (10th Cir. 2003) ("In general, for an error to be contrary to well-settled law,

either the Supreme Court or this court must have addressed the issue."); *United States v.

Rickett*, 535 F. App'x 668, 677 (10th Cir. 2013) ("[T]o render an alleged error 'clear' or

'obvious,' Mr. Rickett needs controlling Supreme Court or Tenth Circuit precedent, or a

hefty weight of controlling authority from other circuits." (emphasis omitted)).  We need

not inquire beyond the first two requirements of plain-error review, because even if there

was error in this case, it was not clear.

We easily conclude that the law regarding the unit of prosecution is unclear in this

circuit because no precedent of this court has addressed, much less resolved, a claim of

multiplicity under 18 U.S.C. § 2252(a)(2) after convictions for distributing child

pornography.  And the only precedential decision of a sister circuit on the matter in the

file-sharing context rejects Defendant's position.  *See United States v. Woerner*, 709 F.3d

527, 541 (5th Cir. 2013) (charges based on separate downloads from shared files by FBI

agents were "not multiplicitous because they involve . . . separate transactions in which

multiple visual depictions were distributed").

Defendant contends that his position is mandated by two of our cases—*United

States v. Shaffer*, 472 F.3d 1219 (10th Cir. 2007), and *United States v. Dunn*, 777 F.3d

1171 (10th Cir. 2015)—but he reads too much into these opinions.  Both involved child-

pornography convictions of a defendant who used a file-sharing program. In *Shaffer* the issue was what *active* conduct of the defendant was necessary before a jury could find that he distributed the pornography. *See* 472 F.3d at 1223–25. We held that all the defendant had to do in the file-sharing context was make files on his computer available for others through the file-sharing program. *Id*. We likened his distribution to that of an owner of a self-service gas station:

> The owner may not be present at the station, and there may be no attendant present at all. And neither the owner nor his or her agents may ever pump gas. But the owner has a roadside sign letting all passersby know that, if they choose, they can stop and fill their cars for themselves, paying at the pump by credit card. Just because the operation is self-serve, or in Mr. Shaffer's parlance, passive, we do not doubt for a moment that the gas station owner is in the business of "distributing," "delivering," "transferring" or "dispersing" gasoline; the *raison d'etre* of owning a gas station is to do just that. So, too, a reasonable jury could find that Mr. Shaffer welcomed people to his computer and was quite happy to let them take child pornography from it.

*Id*. at 1223–24. It was unnecessary for the defendant to actively send the unlawful images. In that case there was no question that the images had been downloaded to another computer; a law-enforcement officer had downloaded some images using the file-sharing program. *See id.* at 1222. And the defendant was charged with only one count of distribution, so multiplicity was not an issue. *See id.* at 1226. *Shaffer* does not help Defendant.

Dunn differs from *Shaffer* in that there was no evidence that anyone had downloaded the defendant's images to another computer. *See Dunn*, 777 F.3d at 1173–75. The defendant had been convicted on one count of distribution or attempted

8

distribution of child pornography under § 2252A(a)(2) & (b).  *See id.* at 1172, 1175.  The

jury was instructed:

> If a person knowingly makes images available on a peer-to-peer file sharing
> network, such as [the file-sharing program used by Defendant], this is
> considered "distribution" of the images.  In other words, the Government
> may meet its burden of proof on this element by showing that Defendant
> knowingly allowed others access to his [file-sharing program] shared
> folder.

*Id*. at 1175 (emphasis and original brackets omitted).  The district court rejected the

defendant's proposed instruction that distribution requires that someone downloaded one

of the defendant's shared-file images.  *See* Aplee. Br. at 11, *Dunn*, 777 F.3d 1171 (No.

13-4104).  The district court explained that the statute "collapsed distribution and

attempted distribution into a single offense," so "attempted distribution in and of itself . .

. is sufficient to satisfy the elements of the charged offense."  *Id*. (internal quotation

marks omitted).

In our opinion in *Dunn* we wrote that "the defendant's placement of child

pornography files into a shared folder accessible to other users was itself sufficient for the

trier of fact to conclude that the defendant had 'distributed' the material."  777 F.3d at

1175.  We explained that "*Shaffer* controls this case," *id*., even though there was no

question in *Shaffer* that there had been a download of the defendant's shared files.  As we

understand this passage in *Dunn*, all we were saying was that by placing the child

pornography in a shared file, the *defendant* had done everything he needed to do to

violate the statute, just as one who fires a gun at someone with intent to kill has done all

9

he needs to do to be convicted of murder or attempted murder, depending on what happens to the intended victim. *See United States v. Vigil*, 523 F.3d 1258, 1267 (10th Cir. 2008) ("To prove an attempt crime, the government must prove an (1) intent to commit the substantive offense; and the (2) commission of an act which constitutes a substantial step towards commission of the substantive offense." (internal quotation marks omitted)). The difference between this case and the murder example is merely that distribution and attempted distribution, unlike murder and attempted murder, are punished identically by the statute. In *Dunn*, whether the Defendant violated the statute by distributing or attempting to distribute could still depend on whether others downloaded the material; but because the statute equates the two offenses, *Dunn* did not need to decide which occurred. This reading of *Dunn* comports with *Shaffer*'s focus on only the action required by the *defendant*, which is why we could say that our conclusion was controlled by *Shaffer*. And our reading of *Dunn* avoids the unnecessary creation of a circuit split on the question of whether an actual download is required for distribution (as opposed to attempted distribution). *See United States v. Husmann*, 765 F.3d 169, 174–75 (3d Cir. 2014) ("Several circuits have made clear that distribution occurs when pornographic materials are actually transferred to or downloaded by another person. . . . [And] no circuit [including the Tenth Circuit in *Shaffer*] has held that a defendant can be convicted of distribution under § 2252 in the absence of a download or transfer of materials by another person.").

Most importantly, because *Dunn* concerned a conviction on only one count, it had no occasion to address the unit of prosecution for either distribution or attempted distribution, which need not be the same. The unit of prosecution for distribution, as charged in the case now before us, may be each actual delivery of images, *see Woerner*, 709 F.3d at 541, while the unit of prosecution for attempted distribution may be each instance in which images are placed in the defendant's shared folder. We leave those issues for another day. For now we need hold only that Defendant's convictions were not clearly multiplicitous.

### B. Objection to the PSR

Defendant's second contention is that the district court's consideration of his pending state-court charge violated Fed. R. Crim. P. 32(i)(3)(B), which provides that the district court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Pointing to his assertions of innocence regarding the state-court charge in his allocution before sentencing, he contends that he objected to that portion of the PSR and that the court was therefore not permitted to rely upon the allegations without first finding their probable accuracy by a preponderance of the evidence. *See United States v. Shinault*, 147 F.3d 1266, 1278 (10th Cir. 1998) ("When a defendant objects to a fact in a presentence report, the government must prove that fact at a

11

sentencing hearing by a preponderance of the evidence.").[1]

---

[1] The relevant allocution exchange was as follows:

> THE DEFENDANT: . . . First of all, I'd like to say that I'm not guilty of any crime of raping anybody like he said. I'm innocent and have not been proven guilty of anything. Is that he's just—that's just—he's just saying whatever he's wanting to say there, but I have an opportunity—I'm still in the United States of America and I'm still innocent until proven guilty, regardless of what he's saying there.
>
> These are only allegations, and if you read the PSR, you read the allegations, you read the statements, you should be able to read into the fact that there's something amiss there. There's somebody hiding something there.
>
> Those statements, if you read them, you will see that. You as a judge, you've got enough sense to realize that those statements—there's something missing there.
>
> . . . .
>
> THE COURT: . . . I've read the [PSR], and more than once. What are the things that we're jumping over?
>
> THE DEFENDANT: I'm just saying that if you've read the statements that they put in there that was made by the alleged victim, that there's something being hidden there. Those statements don't even make common sense.
>
> . . . .
>
> I have raised family. I've taken care of many people's children. I've never in any shape, form or fashion hurt a child and I never would.
>
> These allegations they're saying, that's got to be proven, and they're—it's a long ways from being in concrete. He's taking it as it's in concrete but it ain't. And I'm still in the United States of America and I'm still innocent of those crimes until proven guilty of them, so use those—that allegations to judge me here is unfair to me.
>
> I've been—this whole trial has been unfair. I've been sitting here put in this trial—for two weeks prior to my trial that's all in the media, there's evidence of jurors on Facebook that knew about this beforehand. I have the evidence, my lawyer has the evidence. There's evidence of a violation of the ABA 3.8(d) by this man next to me here of *Brady*, *Giglio* violations.
>
> We've got evidence of it in the transcripts where he put a witness on

Continued . . .

the stand to rebuttal my testimony that had already stated one thing and stated another. He knowingly put somebody on the stand to tell a lie.

There's a lot of things that's happened in this trial that's all speculation. I never in any shape, form or fashion distributed anything to anybody. They come onto an Ares program, the files were in Ares. He took the files. I didn't distribute anything to him.

I've been made out to be a monster and I am not. You can't find a single kid nowhere in this country that would say that I've done a thing to them other than whoever this is that alleged I've done something.
. . . .

THE COURT: All right. Mr. Smith, I think the bulk of those things that you are complaining about, at least from my perspective, have not been presented to the court by way of your counsel. So what I'm basing this sentencing on is the calculations made and observations made by the United States Probation Office, and your very able counsel has presented his motions that are considered, but these issues as to *Giglio* and other things that I really haven't a clue of what you're talking about is something that is just not on our plate, unless I've missed something.
. . . .

THE COURT: A lot of what you're saying is somewhat cryptic to me. I was here. And I'm just not really certain about what you're talking about in some respects. But again, if it's not raised, and I have studied what has been raised, then I can't do much about it.

If [defense counsel] has anything he'd like to say about these things that are somewhat peripheral it seems, I'm happy to hear it, but it's not before me. It is what it is.

[DEFENSE COUNSEL]: I would just say that—I mean, I've already said what . . . all I have to say is in regard to sentencing and I've said it.

THE COURT: Unfortunately, I think it's kind of a bad reflection of you, but so be that too.

I think that one of the things that has, I think, and again I'm guessing here because of what I would consider to be, to some extent, a little bit of a rant, *the reference to a recorded Creek County Jail telephone conversation. Is that the issue you're concerned about?*

THE DEFENDANT: *No, Your Honor.*

THE COURT: *You're concerned about the substance of a charge that . . . that's not been concluded.*

THE DEFENDANT: *Yes.*

Continued . . .

But when Defendant voiced his objections, he was represented by counsel. And "a district court does not need to consider pro se objections made by defendants represented by counsel." *United States v. Harrison*, 743 F.3d 760, 762 (10th Cir. 2014); *accord United States v. Jarvi*, 537 F.3d 1256, 1262 (10th Cir. 2008) ("Because Mr. Jarvi was proceeding through counsel, the district court was within its discretion not to consider the *pro se* motion in connection with challenges to the PSR."). The district court even gave counsel an opportunity to supplement his argument based on Defendant's allocution, which counsel declined. The district court therefore properly refused to address the arguments. Because Fed. R. Crim. P. 32(i)(3)(A) permits a district court to "accept any undisputed portion of the presentence report as a finding of fact," the court was free to rely upon the PSR's description of the state rape charge in sentencing Defendant.

In any event, Defendant did not appear to challenge the accuracy of the description of the DNA evidence or of the prison telephone conversation with his wife. And, more

---

THE COURT: *One of the issues that populates this report is a recorded telephone conversation with your wife. Do you understand that?*
THE DEFENDANT: *Yes, I understand it. I read it.*
THE COURT: *And I did too. And I think that some of the things you've just said here, there's—to put it mildly—a conflict between the recording and what you're saying. That's the only that I can glean from your statement that you're talking about. So that's where we are.*
*Is there anything else you want to state, Mr. Smith, at this time?*
THE DEFENDANT: No, Your Honor.

R., Vol. 2 at 279–84 (emphasis added).

14

importantly, the state charge did not affect Defendant's sentence. The district court did not consider the state charge in calculating the guideline sentencing range. And although it said that it would consider the charge in deciding where to impose sentence within the varied guideline range,[2] it ultimately imposed sentence at the bottom of the range. Any error was therefore harmless.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.

---

[2] The court said that Defendant's "unrelated pending criminal case . . . was also considered in determining a sufficient but not greater [than] necessary sentence *within the aforementioned variance guideline range*." R., Vol. 2 at 290–91 (emphasis added).