FILED
United States Court of Appeals
Tenth Circuit

April 16, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GERALD JAMES VIARRIAL,

    Defendant - Appellant.

No. 17-2032
(D.C. No. 1:15-CR-00214-MV-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ, SEYMOUR,** and **PHILLIPS**, Circuit Judges.
_____

    In August 2010, Gerald Viarrial ordered seven of his children and their mother to form a line in a field. Once his family was in the formation he specified, Mr. Viarrial paced around them, pointing a gun at them and telling them how their bodies would not be found after he killed them. Suddenly, Mr. Viarrial's cell phone rang and diverted his attention. Based on the encounter that August day, he was later arrested and charged pursuant to 18 U.S.C. §113(a)(3) with three counts of assault with a dangerous weapon against two of his oldest children and their mother. After a jury trial where several of the children, their mother, and Mr. Viarrial testified, he was convicted of all three assault

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

counts. Mr. Viarrial contends on appeal that convicting him for three separate assaults with a dangerous weapon constitutes double jeopardy because there was only one "assault," and that he was improperly sentenced under 18 U.S.C. § 924(c). We affirm.

## I.

Mr. Viarrial and his former partner, Jane Doe,[1] had seven children together. Never married, the couple remained together from 1996 to 2012. By 2009, Mr. Viarrial was constantly terrorizing Jane Doe and the children with physical abuse and threats to kill them. The threats became so severe and recurrent that the family feared reporting Mr. Viarrial. At one point, Mr. Viarrial shot and killed a horse with a shotgun in front of Jane Doe and told her "I'll shoot you, too." ROA vol. 3 at 227.

In August 2010, Mr. Viarrial took his family to a field for target practice with firearms. They returned home, where Mr. Viarrial realized a set of keys was lost. He took his partner and children back to the target practice field, where he commanded his family to find the missing keys. The family's endeavor was unsuccessful and Mr. Viarrial became irate. He ordered his family—Jane Doe, their four sons, and their three daughters—into a line. The youngest daughter was six months old and held in her mother's arms. Mr. Viarrial walked around them, threatening them with a firearm, shouting profanity, and telling them that their bodies would not be found after he killed them. Suddenly, Mr. Viarrial's cell phone rang and he answered it, ending the altercation.

---

[1] To protect the privacy of those involved, this opinion refers to Mr. Viarrial's child victims and his former partner with the pseudonyms used in the indictment, jury instructions, and verdict form.

Threats and physical abuse continued in the Viarrial family for several years thereafter. John Doe 1, Mr. Viarrial and Jane Doe's eldest son, finally reported his father to authorities in March 2014. Because the events took place in Indian country and Mr. Viarrial is a Native American, a federal investigation ensued.

Based on the events of the 2010 altercation, Mr. Viarrial was indicted and tried in 2015 for, inter alia, three counts of assault with a dangerous weapon in violation of 18 U.S.C. §§ 1153 and 113(a)(3). Jane Doe and the couple's two eldest sons, John Doe 1 and John Doe 2, testified. Although John Doe 1 was a minor at the time of the August altercation, he turned eighteen three months before trial. John Doe 2 was sixteen. Mr. Viarrial and Jane Doe 1's eldest daughter also testified and was thirteen at time of trial.

Various motions in limine had excluded multiple topics involving Mr. Viarrial's past threatening actions toward his family. Consequently, prior to trial, the AUSA told the court that the victims had trouble knowing what they could and could not discuss. The AUSA said that prosecutors were "treading very lightly" in their questioning. *Id.* at 127. The trial judge also cautioned care in questioning minor victims, instructing both sides to "extend [the child witnesses] every courtesy" and "be safe rather than sorry." *Id.* at 132.

At trial, Jane Doe and her sons each testified to a consistent outline of events: the family was taken into a field, lined up, threatened at gunpoint, and then released after Mr. Viarrial's cell phone rang. Because of the limited questioning, however, their testimony did not fill in the outline with specific details of Mr. Viarrial's actions. For instance, the distance between Mr. Viarrial and his family when he aimed at them was not clear. Only

3

one witness—a law enforcement agent not present at the altercation—testified about distance, and his testimony was somewhat vague. ROA vol. 3 at 178-79 ("Q: Now you have your arm extended out with your finger pointed. Did they agree that that is about how far the defendant was standing away from them? A: Yes, they said approximate, approximately, yes.").

No witness testified about the speed, distance, or precision involved when Mr. Viarrial aimed his firearm. The jury was shown a photographic reconstruction of the scene, and John Doe 2 was questioned about it, but neither the photograph itself nor a complete description of it was included in the record on appeal. Jane Doe, John Doe 1, and John Doe 2 all used collective nouns when they described how Mr. Viarrial aimed his firearm: in their words, Mr. Viarrial "was walking around with a gun on the side," "just pointing it at us," "at us," "at all of us." *Id.* at 219, 375, 420, 433. The government asked only one victim, John Doe 2, whether his father directly pointed the gun at him individually. When John Doe 2 answered affirmatively, the government followed with another collective noun question, asking "And your family?" *Id.* at 421. John Doe 2 answered, "yes." *Id.* Mr. Viarrial testified and denied that he pointed a gun at either his partner or his children. He also denied that he threatened anyone.

The jury was instructed that to find Mr. Viarrial guilty of assault with a dangerous weapon on each of the three counts, the government was required to prove that Mr. Viarrial assaulted each of the victims—Jane Doe for Count 1, John Doe 1 for Count 2,

4

and John Doe 2 for Count 3.[2] The jury was also instructed that finding guilt on any one count should not affect its findings on any other counts. The jury returned guilty verdicts on all three counts.

At Mr. Viarrial's sentencing hearing, the court remarked on the difficulties the victims had experienced while testifying.

> I saw your children testify. I was particularly impressed with [John Doe 1]'s testimony. I saw the harm that had been done to [John Doe 1]. That child is unbelievably impaired. Honestly, I was quite shocked to see how impaired he was. The difficulty he has speaking, and the fact that he was so traumatized in answering questions. I saw how difficult it was for your children to be in court.

*Id.* at 610. The court also summarized the August 2010 altercation:

> On one particularly disturbing occasion, Mr. Viarrial took his entire family to the mountains to practice shooting. He then forced them all to stand in a

---

[2] For example, the instruction given for the assault on Jane Doe was as follows:

> In order to sustain its burden of proof for the crime of assault with a dangerous weapon with intent to do bodily harm and without just cause or excuse as charged in Count 1 of the Indictment, the government must prove the following five (5) essential elements beyond a reasonable doubt:
>
> **First**: The Defendant assaulted Jane Doe by intentionally using a display of force that reasonably caused her to fear immediate bodily harm;
>
> **Second**: The Defendant used a dangerous weapon, that is, a handgun;
>
> **Third**: The Defendant acted with the intent to do bodily harm to the victim;
>
> **Fourth**: The incident occurred in Indian Country; and
>
> **Fifth**: The Defendant is an Indian.

ROA vol. 1 at 444.

line, facing away from him. He walked behind them with a gun in his hand stating, "I should just shoot all of you guys right here. You're not worth it and you're just worthless."

*Id.* at 619.

## II.

Mr. Viarrial asserts that his Double Jeopardy rights were violated because the unit of prosecution under the charging statute, 18 U.S.C. § 113(a)(3), is clearly act-based rather than victim-based. Consequently, he argues, the jury should have been instructed specifically to find distinct assaultive acts instead of assaults against distinct victims and that the government provided insufficient evidence to prove three distinct assaultive acts. He also claims that § 113(a)(3) is not a crime of violence under § 924(c).

### A. Unit of Prosecution

The Double Jeopardy Clause of the Fifth Amendment provides that "[no] person [shall] be subject to the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This clause not only protects individuals from being punished for the same offense after once being convicted, but also protects individuals from being exposed to "multiple punishments for the same offense imposed in a single proceeding." *Jones v. Thomas*, 491 U.S. 376, 381 (1989). Put another way, "the Double Jeopardy Clause prohibits . . . convicting a person on more than one count for the same offense." *United States v. Smith*, 815 F.3d 671, 674 (10th Cir. 2016).

Mr. Viarrial was convicted under 18 U.S.C. § 113(a)(3), which prohibits "[a]ssault with a dangerous weapon, with intent to do bodily harm." His Double Jeopardy argument takes two forms—first that the court erred by not properly instructing the jury

6

as to § 113(a)(3)'s unit of prosecution, and second that the government failed to present sufficient evidence to convict Mr. Viarrial of three separate assaults. The crux of both of these arguments relies on a single legal theory: Mr. Viarrial wants us to hold that "[t]he number of victims of an assault does not dictate the allowable number of charges under 18 U.S.C. § 113(a)(3). Instead, each charge must correspond with a separate act of assault, which is the unit of prosecution under section 113(a)(3)." [3] Aplt. Br. at 5. Neither we nor any other circuit has ruled on the unit of prosecution for 18 U.S.C. § 113(a)(3), and for the reasons set forth below, we need not determine that issue in this case.

### 1. Jury Instruction

Mr. Viarrial contends the court erred by not instructing the jury that it had to find three separate assaultive acts in order to convict him of three counts of violating § 113(a)(3). Mr. Viarrial is correct that the district court never gave such an instruction. Because he did not raise this issue below, we review for plain error.

Reversal for plain error requires four elements: there was indeed an error, the error was plain, it affected the defendant's substantial rights, and it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732-35 (1993) (quoting *United States v. Young*, 470 U.S. 391, 392 (1985)). Under *Olano*'s four-part test, an error is plain if it "is contrary to well-settled law." *Smith*, 815 F.3d at 675 (quoting *United States v. Whitney*, 229 F.3d 1296, 1309 (10th Cir.

---

[3] A criminal statute's unit of prosecution is the threshold of activity required to commit a discrete violation of that statute. *United States v. Rentz*, 777 F.3d 1105, 1108 (10th Cir. 2015) (en banc).

2000)).  Generally well-settled law requires direct precedent from the Supreme Court or this court.  *Id.* (citing *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003)).  If neither of these is available, "a consensus in the other circuits" is necessary.  *Id.*  (citing *United States v. Teague*, 443 F.3d 1310, 1319 (10th Cir. 2006)).  Where out-of-circuit authority is split or all three potential guides—the Supreme Court, our court, and our sister circuits—are silent, an error cannot be clear.  *Teague*, 443 F.3d at 1319.

We recently considered an undefined unit of prosecution under plain-error review in *Smith*, 815 F.3d at 674-75.  Faced with silence from our own circuit regarding the proper unit of prosecution, and only one case from another circuit that actually rejected defendant's argument, we held that "[w]e need not inquire beyond the first two requirements of plain-error review, because even if there was error in this case, it was not clear."  *Smith*, 815 F.3d at 675.  In other words, an absence of well-settled law forecloses a plain error finding.  Accordingly, because neither this circuit nor any other circuit has determined the unit of prosecution for § 113(a)(3),  there was no reversible error in the jury instruction here.

### 2. Sufficiency of the Evidence

Mr. Viarrial also contends that the "evidence at trial did not establish that [he] committed more than one assault."  Aplt. Br. at 13.  An important part of determining sufficiency of the evidence is comparing the evidence established to the threshold required—here, the unit of prosecution.  After reviewing the record, we conclude that the evidence presented in this case was sufficient regardless of whether the proper unit of prosecution was victim-based or act-based.

8

### a. Standard of Review

When we review sufficiency of evidence, we "'tak[e] the evidence—both direct and circumstantial,' and reasonable inferences drawn from that evidence—'in the light most favorable to the government' and ask 'only whether . . . a reasonable jury could find [the defendant] guilty beyond a reasonable doubt.'" *United States v. Rufai*, 732 F.3d 1175, 1188 (10th Cir. 2013) (alteration in original) (quoting *United States v. Kaufman*, 546 F.3d 1242, 1263 (10th Cir. 2008)). In doing so, "[w]e must reconcile the highly deferential 'reasonable jury *could* find' appellate review standard with the 'beyond a reasonable doubt' standard." *Id.* at 1189. "[W]e accept the jury's resolution of conflicting evidence," *United States v. Grissom,* 44 F.3d 1507, 1510 (10th Cir. 1995), and "[w]e may not weigh evidence or consider credibility of witnesses." *Rufai*, 732 F.3d at 1188 (quoting *United States v. Renteria*, 720 F.3d 1245, 1253 (10th Cir. 2013)). We cannot "uphold a conviction . . . that was obtained by nothing more than 'piling inference upon inference .'" *United States v. Rahseparian*, 231 F.3d 1257, 1262 (10th Cir. 2000) (quoting *United States v. Fox*, 902 F.2d 1508, 1513 (10th Cir. 1990)). "'[R]easonable inferences supported by other reasonable inferences . . . may warrant a conviction,' but '[a] jury will not be allowed to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility.'" *Rufai*, 732 F.3d at 1188 (quoting *United States v. Michel*, 446 F.3d 1122, 1127-28 (10th Cir. 2006)).

Mr. Viarrial did not object to the sufficiency of evidence at trial, so our review is for plain error. Because "a conviction in the absence of sufficient evidence of guilt is plainly an error, clearly prejudiced the defendant, and almost always creates manifest

9

injustice," *United States v. Goode*, 483 F.3d 676, 681 n.1 (10th Cir. 2007), the first three prongs of plain-error review are usually readily satisfied if the evidence was lacking. The fourth prong is generally also satisfied. *Rufai*, 732 F.3d at 1189. Here there was no error, so we need not progress beyond the first prong.

### b. Reasonable Inferences

Jane Doe, John Doe 1, and John Doe 2 were consistent in testifying that Mr. Viarrial lined them up and paced around their family while pointing a gun at them and telling them they were worthless. Although their testimony was silent or unclear regarding the distance, precision, or speed with which the head of their family threatened to kill them, jurors were able to view photographic reenactments of the lineup, which provided further information regarding distance and aim.

When taken in the light most favorable to the government, the evidence presented supports reasonable inferences that Mr. Viarrial paced on both sides of the line in close proximity while aiming a firearm. For one person to walk on both sides of a shoulder-to-shoulder line of seven people, one would necessarily walk past each person in succession. If the person walking were also holding a firearm perpendicular to his body, as witnesses testified Mr. Viarrial did, it is no great leap to infer that the gun-wielder aimed the weapon at each person individually as he passed by him or her. We do not determine today how much differentiation is necessary to separate discrete assaultive acts. *If* the unit were act-based, it seems clear to us that aiming a gun at each person in a line while walking along that line would be a series of discrete, sequential acts. We do not insist on technical perfection from trial court testimony. In Mr. Viarrial's case, where abused

10

child and adult witnesses testified to a consistent description of the alleged assailant's behavior, the evidence presented a clear outline of the events. It is reasonable for the jury and us to infer connections among these dots, laid out but not explicitly linked by trial counsel. When viewed in the light most favorable to the government, we hold that the evidence presented at trial was sufficient for a reasonable jury to find Mr. Viarrial guilty of three counts of assault beyond a reasonable doubt.

Gerald Viarrial lined up seven of his children and their mother, paced around them while aiming a firearm, informed them that their bodies would not be found after he killed them, and only released them when he was interrupted by his ringing cell phone. We leave for another day whether Mr. Viarrial should have been charged based on acts or on victims—and how juries should be instructed based on this distinction—when it has first been litigated below. Here, whether the proper unit was acts or victims makes no difference. Based on the facts established at trial, and every reasonable inference to be drawn from them, we see no plain error in Mr. Viarrial's assault convictions.

## B. Mr. Viarrial's § 924(c) Conviction

Mr. Viarrial originally challenged his conviction under 18 U.S.C. § 924(c) but he conceded in his reply brief that *United States v. Ontiveros*, 875 F.3d 533 (10th Cir. 2017), foreclosed his argument. *See* Aplt. Reply Br. at 1 n.1.

## C. Sentencing Guideline

Mr. Viarrial raised for preservation only an argument regarding upward adjustments in his sentencing guidelines. He acknowledged that his argument was

foreclosed by our decision in *United States v. Fisher*, 132 F.3d 1327, 1329-30 (10th Cir.

1997).  Because *Fisher* remains precedential, Mr. Viarrial's argument remains foreclosed.

Accordingly, we affirm.


Entered for the Court


Stephanie K. Seymour
Circuit Judge