In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-3585

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JONATHON M. SAINZ,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 707 — **Samuel Der-Yeghiayan**, *Judge.*

ARGUED MAY 20, 2015 — DECIDED JUNE 27, 2016

Before BAUER, FLAUM, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Defendant Jonathon M. Sainz appeals from his sentence for transporting and possessing child pornography. Sainz presents two arguments on appeal. First, he argues that the district court ordered him to pay too much restitution to one victim of his possession crime. Second, he argues that the district court erred by imposing three special conditions of supervised release. We affirm the restitution order, but we order a limited remand to correct some issues of

vagueness and overbreadth in the conditions of supervised release.

I.   *Restitution Order*

By pleading guilty, Sainz confessed to possessing thousands of child pornography images. Six images were of a victim known as "Cindy," unlawful images of whom have circulated widely on the internet. The government argued in presentence filings and during the sentencing hearing that Sainz should pay restitution to Cindy because she was a victim of his crime. See 18 U.S.C. § 2259(b)(4) (mandating restitution to victims of child sexual exploitation). Cindy has incurred financial losses such as future lost earnings, attorney fees, and medical and psychiatric expenses.

In the district court, Sainz argued that restitution to Cindy was not appropriate because he did not cause her losses. He possessed images of Cindy but had no role in creating or distributing them. Sainz claimed that he was not a legal cause of Cindy's harm because hundreds or thousands of others also possessed the images, so she would have been harmed by others even if he had never possessed the images of her. The court rejected this argument because the government had shown that Sainz proximately caused harm to Cindy by viewing the images, which Cindy said re-victimized her and made her feel that the abuse was continuing.

The district court's approach to causation was confirmed as correct by the Supreme Court's intervening decision in *Paroline v. United States*, 572 U.S. —, 134 S. Ct. 1710 (2014). The Court interpreted 18 U.S.C. § 2259, the statute governing restitution for child sexual exploitation offenses, to require the government to show the defendant's offense proximately

caused a victim's losses. *Id*. at 1722. In *Paroline* the Court held that the defendant was required to pay restitution to the victim depicted in images he possessed because he caused some portion of her losses: "While it is not possible to identify a discrete, readily definable incremental loss [the defendant] caused, it is indisputable that he was a part of the overall phenomenon that caused her general losses." *Id*. at 1726. The Court recognized the ongoing harm possession inflicts on the victim because "every viewing of child pornography is a repetition of the victim's abuse." *Id*. at 1727.

In light of *Paroline*, Sainz does not challenge on appeal the district court's ruling that he caused harm to Cindy and must pay her some amount of restitution. Instead, he challenges only the amount he was ordered to pay, which he argues is disproportionate to his relative role in causing Cindy's losses.

We review the calculation of restitution for abuse of discretion and will set aside an order of restitution only if the district court used inappropriate factors or did not exercise discretion at all. *United States v. Stein*, 756 F.3d 1027, 1029 (7th Cir. 2014), citing *United States v. Frith*, 461 F.3d 914, 919 (7th Cir. 2006). We may find an abuse of discretion, though, where a district court "based its ruling on an erroneous view of the law." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990); see also *United States v. Robers*, 698 F.3d 937, 941 (7th Cir. 2012) (*de novo* review of legality of restitution order).

The government argued to the district court that Sainz should pay $8,387.43 in restitution, which is 1/136 of Cindy's total loss for the relevant time period. The government divided the total loss by 136 because Sainz is the 136th offender who has been prosecuted and ordered to pay Cindy restitution. This calculation is known as the 1/n method, where n

represents the number of defendants who have paid the victim restitution plus 1 (to count the defendant being sentenced). See *United States v. Gamble*, 709 F.3d 541, 554 (6th Cir. 2013) (approving a pre-*Paroline* restitution order using the 1/n method, calling the method a "pragmatic solution that district courts may use as a framework").[1]

The district court agreed with the government and ordered Sainz to pay Cindy $8,387.43 in restitution, citing *Gamble* and using the 1/n method. Sainz contends that attributing 1/136 of the total loss to him was an error under *Paroline*.

*Paroline* addressed a difficult, nearly intractable problem. The Supreme Court's decision avoided rigid or mechanical rules, leaving district courts considerable discretion in deciding the extent of a defendant's restitution in such cases. The Court instructed broadly that "a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." 134 S. Ct. at 1727. The amount of restitution for a possessor of child pornography like Paroline or Sainz should be neither "severe" nor a "token or nominal amount." *Id*. "The required restitution would be a reasonable and circumscribed award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role." *Id*.

---

[1] Cindy's total loss amounted to a little more than $1.1 million, most of which is future lost earnings. This total includes only expenses incurred after the defendant's offense conduct. Sainz does not dispute the government's calculation of the total loss, which is both conservative and well-documented.

The Court then discussed "a variety of factors district courts might consider in determining a proper amount of restitution":

> [D]istrict courts might, as a starting point, determine the amount of the victim's losses caused by the continuing traffic in the victim's images … then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses. These could include the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id*. at 1728.

We find no legal error or abuse of discretion in the district court's order that Sainz pay Cindy $8,387.43 in restitution. Though the district court sentenced Sainz before *Paroline* was decided, its ruling followed the same procedure of first calculating total loss and then determining what fraction of that loss should be attributed to the defendant. The district court

did not explicitly discuss all of the factors that *Paroline* said may be relevant in determining the defendant's relative role. The district court's use of the 1/n method took into account the number of past criminal defendants found to have contributed to Cindy's total loss, which is one of the *Paroline* factors that was ascertainable in this case.

While a district court could consider additional factors, the bottom line here is that the amount of the award is substantively reasonable. It is neither severe nor trivial. It is a reasonable and circumscribed award for Sainz's relative role in causing Cindy's harm. Though he neither produced nor distributed her images, he possessed them and in doing so re-victimized her and contributed significantly to her harm. The district court did not abuse its discretion in finding that roughly $8,400 in restitution was fair for this defendant.

Sainz argues that the 1/n method treats all defendants convicted of possessing or distributing any images of Cindy as equals. When the 1/n method, and only that method, is used, the restitution amount for each offender does not account for the offender's relative role or other individualized factors. The result depends only on the total loss and the sequence in which multiple offenders are sentenced. For example, if the method were strictly applied to all offenders who distributed or received images of Cindy, the third offender sentenced would owe a restitution amount of roughly $366,000 to Cindy (1/3 of her total losses) while the 3000th offender sentenced would owe about $366 (1/3000 of her total losses).

Sainz argues that use of the 1/n method is contrary to the instruction in *Paroline* to award restitution that comports with the individual defendant's relative role in causing the harm. The method does not incorporate any of the offender-specific

factors discussed in *Paroline*, such as whether the offender re-produced or distributed images of the victim, whether the de-fendant had any connection to the initial production of the images, and how many images of the victim the defendant possessed. Sainz believes those factors weigh in favor of lower restitution in his case because he did not produce or distribute the images and because he possessed only six images of Cindy.

Sainz also argues that the district court erred by failing to consider other factors suggested in *Paroline*. The government did not present the district court with either a prediction about the number of offenders likely to be convicted in the future for contributing to Cindy's losses or an estimate of the broader number of offenders who were involved but are un-likely to be caught. Sainz believes that accounting for these factors would lead to a lower restitution order in his case be-cause his role was small as compared to the hundreds or thou-sands of others who may have also possessed the images.

We do not read *Paroline* as requiring district courts to con-sider in every case every factor mentioned. The Supreme Court made clear that the *Paroline* factors were permissive, not mandatory, and were provided as "rough guideposts" that "district courts might consider in determining a proper amount of restitution." *Id*. at 1728. The Court explained that "it is neither necessary nor appropriate to prescribe a precise algorithm for determining the proper restitution amount at this point in the law's development," adding: "These factors need not be converted into a rigid formula." *Id*.

Many of the factors discussed in *Paroline* refer to infor-mation that may not even be reliably known. For example, the government may not be able to produce evidence that would

provide reasonable predictions about the number of offend-ers likely to be convicted in the future or the broader number of offenders who were involved but are unlikely to be caught. See 134 S. Ct. at 1728. Such predictions might well be mere guesses. But the Supreme Court made clear in *Paroline* that the difficulty of coming up with reasonable estimates for an inde-terminate number of other offenders should not be a barrier to all compensation for victims of child pornography. *Id*. at 1727 (discussing "Congress' clear intent that victims of child pornography be compensated by the perpetrators who con-tributed to their anguish"). As difficult as the problem is, the *Paroline* Court left no doubt that "a court must assess as best it can *from available evidence* the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses." *Id*. at 1727–28 (emphasis added).

The district court here considered the available evidence, exercised its discretion, and arrived at a reasonable restitution award. The court did not err by not addressing every *Paroline* factor. Sainz may be correct that the 1/n method is not appro-priate for all cases because the restitution amount depends so heavily on the number of offenders previously sentenced. Where n is very small or very large, a more nuanced method may be required. But the application of that method to this case resulted in a reasonable restitution order of $8,400 for an offender who possessed six images of the victim and indis-putably contributed to her harm. That amount was not an abuse of discretion. We affirm the restitution order.

II.  *Special Conditions of Supervised Release*

Sainz's sentence included several special conditions of su-pervised release. All were recommended in the presentence

report, so there was no surprise at sentencing in this respect. See *United States v. Lewis*, — F.3d —, 2016 WL 3004435, at *5 (7th Cir. 2016). Sainz did not raise any objections before they were imposed or address them in his arguments about sentencing. Nor did he assert any (unnecessary) exceptions after they were imposed. On appeal, however, he challenges three conditions based on recent decisions of this court. See generally *United States v. Kappes*, 782 F.3d 828 (7th Cir. 2015); *United States v. Thompson*, 777 F.3d 368 (7th Cir. 2015); *United States v. Siegel*, 753 F.3d 705 (7th Cir. 2014); and their numerous progeny.

The challenged conditions will restrict Sainz's future access to sexually explicit material (including material concerning adults), his contact with children, and his use of computers and the internet. The district court did not take steps that could, as in *Lewis*, have resulted in a waiver by the defense of the issues raised on appeal. *United States v. Lewis*, — F.3d at — (finding waiver, or at least forfeiture, where defendant had advance notice of the conditions to be imposed and declined the express invitation of the judge—before sentence was imposed—to voice objections or "requests for further findings or elaboration"). The government agrees that a limited remand is needed to modify these conditions. We do too.

A. *General Appropriateness of Conditions*

First, though, we reject Sainz's challenge to the need for and sufficiency of the district court's findings for all three challenged conditions. Given the nature of Sainz's crimes of transporting and possessing child pornography through use of a computer and the internet, the general need for restrictions on access to sexually explicit materials, contact with minors, and internet and computer use is so obvious that the

district judge did not need to explain further than he did. See *United States v. Jones*, 798 F.3d 613, 620 (7th Cir. 2015) (determining that conditions of supervised release are "appropriately tailored … so long as they are warranted by the defendant's history and characteristics"); *United States v. Castaldi*, 743 F.3d 589, 594-95 (7th Cir. 2014) (in reviewing sufficiency of findings and explanations in sentencing, "we try to take careful note of context and the practical realities of a sentencing hearing"), quoting *United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010) (sentencing judge "need not belabor the obvious").

At Sainz's sentencing hearing, the district judge reviewed the relevant factors in great detail, including his crimes and his history and characteristics, and thus satisfied the explanation and consideration requirements of 18 U.S.C. §§ 3553(a)—(c). Sentencing Tr. at 39-46. Most of those reasons given for the prison portion of the sentence, including the defendant's "grooming" of children in his extended family, obviously extended to the challenged conditions of supervised release. The district judge was not required to repeat himself or to belabor the obvious.

B.  *Access to Sexually Explicit Material*

One condition will prohibit the defendant from possessing or controlling "any pornography, sexually oriented or sexually stimulating materials including visual, auditory, telephonic, or electronic media, computer programs or services" and from patronizing places "where such material or entertainment is available." The parties agree that this provision needs to be narrowed for reasons explained at length in *Siegel*, 753 F.3d 705, 712-13 (7th Cir. 2015). A limited remand will be sufficient to accomplish the required tailoring consistent with *Siegel*.

C.  *Contact With Children*

Another condition will prohibit the defendant from hav-
ing "contact with any person under the age of 18 except in the
presence of a responsible adult who is aware of the nature of
[Sainz's] background and current offense and who has been
approved by the probation officer and treatment provider."
Such conditions that "bar nearly all contact with minors may
be appropriate in certain circumstances." *United States v.*
*Goodwin*, 717 F.3d 511, 524 (7th Cir. 2013). But the parties agree
that this provision needs to be modified to make clear that it
does not prohibit incidental contact with children such as in
ordinary commercial settings. For example, suppose Sainz
wants to buy a hamburger at a restaurant that employs a few
sixteen- and seventeen-year-olds. Doing so could violate this
condition as written. We agree that this provision needs to be
narrowed along the lines we have drawn in other cases, such
as by adding exceptions for commercial business and cases of
incidental or unintentional conduct with minors in general.
*Baker*, 755 F.3d 515, 526–27 (7th Cir. 2014). We therefore vacate
this condition of Sainz's supervised release and remand to
modify it consistent with *Baker*.

D.  *Paying for Computer Monitoring*

The last challenged condition will require the defendant
to comply with a computer and internet monitoring program
administered by the probation office. The court ordered as
part of that condition: "The costs of monitoring shall be paid
by the defendant at the monthly contractual rate." We said in
*Siegel* that such a provision should specify that the defend-
ant's supervised release could not be revoked for mere inabil-
ity to pay since that would amount to imprisonment for debt.

We told the district court in *Siegel* to make that explicit on re-mand. *United States v. Siegel*, 753 F.3d at 714; see also *Baker*, 755 F.3d at 529.

If we examine conditions of supervised release in the ab-stract, years before they will take effect, we can imagine many possible misunderstandings or mistakes that might be made in administering them. One such mistake would be revoca-tion for mere inability to pay, as mentioned in *Siegel* and *Baker*. The speculative possibility that such an issue would arise would not justify a remand at this time. See, e.g., *United States v. Silvious*, 512 F.3d 364, 370-71 (7th Cir. 2008) (error in super-vised release condition was not plain error because 18 U.S.C. § 3583(e) provides means to modify conditions after release). Since the case must go back to modify the other two condi-tions, however, the district court should, consistent with *Siegel* and *Baker*, add the caution to this condition on remand.

The district court's restitution order is AFFIRMED. The special conditions of supervised release addressing access to sexually explicit materials, contact with children, and use of computers and the internet are VACATED and the case is REMANDED to the district court for the limited purpose of modifying those conditions in a manner consistent with this opinion.