[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13025
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cr-20852-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDUARDO ALBERTO NIEZEN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 4, 2020)

Before JILL PRYOR, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Eduardo Niezen pleaded guilty to receiving child pornography. *See* 18 U.S.C. § 2252(a)(2), (b)(1). The district court ordered that he pay ten of his victims restitution totaling $55,000. On appeal, Niezen argues that the district court abused its discretion in setting the restitution awards. We disagree, and affirm.

I.

The FBI suspected that Niezen was downloading child pornography. So in October 2018, the FBI executed a search warrant on his home. Agents seized his computer, hard drive, and other electronic devices. Forensic analysis of the devices revealed nearly 20,000 images and 808 videos depicting minors engaged in sexually explicit conduct—including toddlers and other children under the age of 12. Through the National Center for Missing and Exploited Children (NCMEC), the government was able to identify 31 of the victims. Ten of them—known here as Jenny, Jessica, Erika, Tori, Jane, Maureen, Pia, Ava, Mya, and Emily—then submitted requests for restitution.

The next month, Niezen was formally charged with one count of knowingly receiving child pornography. *See* 18 U.S.C. § 2252(a)(2), (b)(1). He was also charged with two counts of possession of child pornography involving a prepubescent minor. *See id.* § 2252(a)(4)(B), (b)(2). But in exchange for the government dismissing the possession charges, Niezen pleaded guilty to knowingly

receiving child pornography.  Additionally, as part of his plea agreement, Niezen agreed to pay restitution to his victims under all three counts.

The district court then sentenced Niezen to 97 months of imprisonment and 5 years of supervised release.  And at a later restitution hearing, the district court ordered that Niezen pay a total of $55,000 in restitution to the ten victims who submitted requests.  Niezen now challenges those restitution awards on appeal.

## II.

Child pornography is an "abhorrent offense" that "scars the children affected forever."  *United States v. Schrank*, 975 F.3d 534, 536 (6th Cir. 2020).  It robs its victims of their childhood and innocence, and burdens them with "concrete and devastating harms"—harms that are amplified with every new download.  *Paroline v. United States*, 572 U.S. 434, 457 (2014).  After all, each new perpetrator contributes to the victims' "anguish" and "plays a part in sustaining and aggravating" the tragedy.  *Id.*

Congress has taken several steps to combat the proliferation of child pornography.  One is at issue here: restitution.  Child-pornography offenders— whatever their role—are required to pay restitution to their victims.  18 U.S.C. § 2259(b)(4)(A).[1]

---

[1] All citations to 18 U.S.C. § 2259 reference the 1996 version of the statute that was in effect at the time that Niezen committed the charged offenses.  Congress has since amended § 2259 to, among other things, set $3,000 as the minimum amount of restitution for each victim of child

Restitution serves two purposes. *See Paroline*, 572 U.S. at 459. One, of course, is to help "the victim achieve eventual restitution for all her child-pornography losses." *Id.* But it also "forces the defendant to confront, in concrete terms, the harm his actions have caused." *Kelly v. Robinson*, 479 U.S. 36, 49 n.10 (1986). This impresses upon the defendant "the fact that child-pornography crimes, even simple possession, affect real victims." *Paroline*, 572 U.S. at 459.

But child-pornography offenders are only required to pay restitution for losses they "proximately caused." *Id.* at 448. And calculating that amount is not easy—especially when the defendant is "one of thousands" who have possessed a victim's images. *Id.* at 449. To help district courts estimate those losses, the Supreme Court has identified several "rough guideposts" they may consider. *Id.* at 460. First, they should "determine the amount of the victim's losses caused by the continuing traffic in the victim's images"—that is, the victim's total losses from the trade in her images. *Id.* Then, district courts should weigh several factors—known as the *Paroline* factors—to estimate the defendant's "relative causal significance" in producing those losses. *Id.* The result should be a "reasonable and circumscribed" restitution award. *Id.* at 459.

---

pornography. *See* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299, 132 Stat. 4383.

The *Paroline* factors include (1) "the number of past criminal defendants found to have contributed to the victim's general losses"; (2) "reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses"; (3) "any available and reasonably reliable estimate of the broader number of offenders involved"; (4) "whether the defendant reproduced or distributed images of the victim"; (5) "whether the defendant had any connection to the initial production of the images"; (6) "how many images of the victim the defendant possessed"; and (7) "other facts relevant to the defendant's relative causal role." *Id.* at 460.

But again: these factors are only "rough guideposts." *Id.* They are not a "rigid formula." *Id.* The district court therefore has "broad discretion" in calculating the restitution awards. *United States v. Rothenberg*, 923 F.3d 1309, 1328 (11th Cir. 2019).

### III.

We review the legality of a restitution order de novo, but review the factual findings underlying a restitution order for clear error. *Id.* at 1327. We review the amount of the restitution order for abuse of discretion. *Id.* We must give "due deference" to the district court's determination, and "should not vacate an award unless left with the definite and firm conviction that the district court committed a clear error of judgment in setting the award amount." *Id.* at 1328.

IV.

Niezen challenges the district court's restitution awards on three grounds. First, he contends that the government failed to prove some of the victims' total losses.  Second, he asserts that the government did not prove the "causal connection" between his conduct and those losses.  And third, Niezen claims that the district court disregarded the number of each victim's images that he possessed.  We are unpersuaded.

*First*, Niezen argues that the government failed to properly substantiate the victims' total losses.  The government must, of course, prove the "amount of loss the child victim sustained" with evidence bearing "sufficient indicia of reliability to support its probable accuracy."  *United States v. Osman*, 853 F.3d 1184, 1189 (11th Cir. 2017).

But here it did precisely that.  For eight of the victims—Jenny, Jessica, Maureen, Jane, Pia, Ava, Mya, and Emily—the government provided letters from counsel advising the court of the amount requested; victim impact statements detailing the harm caused by the continuing trade in their images; and expert reports by psychologists or economists.[2]  The psychological reports described the harms

---

[2] Niezen complains that many of the expert reports were prepared before he was charged.  He suggests that he therefore cannot be the proximate cause of the losses described in the reports. But we have already rejected this argument. *See Rothenberg*, 923 F.3d at 1335–37; *see also United States v. Monzel*, 930 F.3d 470, 482–83 (D.C. Cir. 2019) (declining to require a "perpetual nickeling and diming of the victim through the imposition of a never-ending accounting requirement").

inflicted on the victims and the necessary treatments; the financial reports calculated the victims' financial losses or the cost of future treatment. Under our precedent, all this evidence is more than sufficient to permit reasonable estimates of these victims' losses. *See Rothenberg*, 923 F.3d at 1337–38.

For the remaining two victims—Erika and Tori—the government was unable to provide expert evaluation reports. That is because neither had received enough restitution to cover the cost of an evaluation. But the government did provide letters from counsel describing the psychological harms that Erika and Tori experienced from the continuing trade in their images. And those letters also stated that, in the absence of expert reports, Erika and Tori's calculable losses at that time were simply the costs of performing the necessary evaluations—$20,500 each. The district court found that to be a reasonable estimate of their total current losses.

We agree. Under the relevant provisions, victims may recover the "full amount" of their losses. 18 U.S.C. § 2259(c)(2). That includes "*any costs* incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim." *Id.* (emphasis added). Expert reports are one such cost. *See Rothenberg*, 923 F.3d at 1339 (treating expert reports as permissible costs); *United States v. Leal*, 933 F.3d 426, 433 (5th Cir. 2019) (same). Accordingly, the district court did not err by using the cost of a psychological report as Erika and Tori's total current losses.

7

*Second*, Niezen argues that the government failed to prove the "causal connection" between his conduct and the victims' losses. Specifically, he complains that the government often did not provide information relating to some of the *Paroline* factors. He points to three factors in particular: (1) the number of past criminal defendants who have contributed to the victim's losses; (2) the number of future offenders likely to be convicted; and (3) the total number of offenders involved.

But this argument confuses the inquiry. The *Paroline* factors are only "rough guideposts" that district courts may consider. 572 U.S. at 460. They are not "rigid evidentiary requirements" the government is "bound to satisfy, or that the district court is obliged to analyze, in every restitution case." *Monzel*, 930 F.3d at 481 (quotation mark omitted). They are "permissive," and the district court is "generally free to disregard them if it reasonably concludes they are unknowable or otherwise uninstructive." *Id.*; *see also United States v. Sainz*, 827 F.3d 602, 606 (7th Cir. 2016) ("We do not read *Paroline* as requiring district courts to consider in every case every factor mentioned."). For that reason, we will not vacate a restitution award simply because "the district court did not address each factor explicitly." *Rothenberg*, 923 F.3d at 1328.

Rather, the district court need only acknowledge "that it has considered the *Paroline* factors and the defendant's arguments regarding restitution" before

8

ordering a reasonable restitution award. *Id.* And here it did just that. The district court examined each victim's total losses from the trade in her images; acknowledged Niezen's conduct as a possessor rather than a distributor or producer; noted the number of images Niezen possessed; and observed other factors, such as the percentage of the victims' losses Niezen would be paying. And to the extent the information was available, the district court considered the number of past defendants who had contributed to the victims' losses. That is sufficient.

*Third*, Niezen argues that the district court impermissibly concluded that the number of each victim's images he possessed was "inconsequential to the restitution process." Not so. The district court specifically noted the number of each victim's images Niezen possessed as part of its analysis under *Paroline*. It merely concluded that the number of images should not necessarily "drive the restitution amount." That is quite right; the number of images Niezen possessed is not determinative of the final restitution award. After all, it is only one factor among many that district courts may consider. Hence, it should come as no surprise when district courts order restitution awards that do not correlate with the number of each victim's images that a defendant possessed. Indeed, this Court has affirmed such "disparate" restitution awards before. *See Rothenberg*, 923 F.3d at 1321–23, 1335. We now do so again.

9

V.

After review, we are not left with a "definite and firm conviction" that the district court committed a "clear error of judgment" in setting the restitution awards. *Id.* at 1328. On the contrary, the district court's restitution awards were "within the general range of reasonable restitution awards dictated by the facts of the case." *Id.*

**AFFIRMED.**